**In re Paul H. GERNAT, Sr., Richard A. Inzero and Marie Antoinette Inzero, Roger E. Vigneault and Delores Vigneault, Gerald J. Duda and Marlene J. Duda, Margaret D. Rockwell, David Vincent Roscetti and Tsukiko Roscetti, Debtors/Appellants,**

v.

**Richard BELFORD and Byron Paul Yost, Trustees/Appellees.**

Nos. 3:95CV1235 (GLG), 3:95CV1305 (JBA), 3:95CV1317 (AHN), 3:95CV1304 (PCD), 3:95CV1385 (AVC) and 3:95CV1306 (RNC).

Bankruptcy Nos. 94–51042, 93–54071, 93–53930, 94–50871, 93–53917 and 94–50570.

United States District Court, D. Connecticut.

March 4, 1996.

**602**

Phillip R. Kaufman, Edison, New Jersey, for Plaintiffs–Appellants.

Ronald I. LeVine, Hackensack, New Jersey, for Defendants–Appellees.

## OPINION

GOETTEL, District Judge.

This is an appeal, pursuant to 28 U.S.C. § 158 (1994) and Fed.R.Bankr.P. 8001(a), from the final Order of the Bankruptcy Court (Shiff, J.) sustaining the objections of the Chapter 7 Trustees to the Debtors' homestead exemption claims under C.G.S.A. § 52–352b(t) (1995) (hereinafter the "Connecticut Homestead Exemption"). *In re Duda*, 182 B.R. 662 (Bankr.D.Conn.1995). For purposes of appeal, the six cases have been consolidated.

The sole issue on appeal is whether the Chapter 7 Debtors may claim the $75,000 Connecticut Homestead Exemption when their bankruptcy cases were commenced after the effective date of the statute, October 1, 1993, but the claims of the unsecured creditors arose prior to that date. The Bankruptcy Court denied the Debtors the benefit of the exemption as to these claims. There being no factual issues on appeal, we review the legal conclusions of the Bankruptcy Court *de novo*. *Truck Drivers Local 807 v. Carey Transportation, Inc.*, 816 F.2d 82, 88 (2d Cir.1987). For the reasons set forth below, we AFFIRM.

## FACTS

As before the Bankruptcy Court, the parties have stipulated to the common operative facts:

1. Each case was filed on or after October 1, 1993.

2. In each case, most or all of the unsecured claims arose prior to October 1, 1993.

3. In each case, the residence of the Debtors is property of the bankruptcy estate.

4. In each case, the Debtors have elected to employ the exemptions available under Connecticut law pursuant to 11 U.S.C. § 522(b) (1994),[1] and have claimed an exemp-

---

1. Under the Bankruptcy Code, 11 U.S.C. § 522(b), a debtor is permitted to choose between the scheme of federal exemptions prescribed in section 522(d) of the Code or the exemptions available under other nonbankruptcy federal law and the law of the state in which the debtor is domiciled. The debtor must select one or the other set of exemptions; he or she cannot

tion in the equity of their residences pursuant to C.G.S.A. § 52–352b(t) (1995), which created a $75,000 exemption in the homestead of the exemptioner.

5. In each case, there is no lien on the residence other than one or more "security interests" as that term is defined by 11 U.S.C. § 101(51) (1994).

## DISCUSSION

 At the outset, we draw largely from the well-reasoned Memorandum and Order of Judge Shiff, from which these appeals were taken.

Prior to October 1, 1993, Connecticut was one of only six states that did not have a homestead exemption. On June 29, 1993, the Connecticut General Assembly enacted Public Act No. 93–301 (hereinafter the "Act"), which amended two sections of Chapter 906, "Postjudgment Procedures," of the Connecticut General Statutes. Section 2 of the Act added a new subsection 52–352b(t), which provides:

> The following property of any natural person shall be exempt:
>
> (t) The homestead of the exemptioner to the value of seventy-five thousand dollars, provided value shall be determined as the fair market value of the real property less the amount of any statutory or consensual lien which encumbers it.

Section 1 of the Act reenacted several definitional provisions, including subsection 52–352a(c), which defines "exempt" as "not subject to any form of process of court order for the purpose of debt collection." Section 3 of the Act, which spawned the instant controversies, provided: "This act shall take effect October 1, 1993, *and shall be applicable to any lien for any obligation or claim arising on or after said date.*" (Emphasis added).

Debtors argue that, in enacting the Connecticut Homestead Exemption, the Connecticut Legislature intended to give homeowners an immediate exemption, which would be available in any bankruptcy filed on or after October 1, 1993. They further assert that the claims of unsecured creditors are just that, and nothing more, and are not property rights entitled to constitutional protection from the retroactive application of this exemption. The Chapter 7 Trustees, on the other hand, rely on what they argue is the plain language of the Act, which states that the new homestead exemption shall apply only when the underlying obligation or claim arose on or after October 1, 1993. They argue that, while it is not necessary to resort to the legislative history because the statute is unambiguous, an examination of the legislative history supports their reading of the statute rather than the Debtors'.

 As pointed out by the Debtors, a chapter 7 bankruptcy is a rehabilitative process, designed to provide the honest debtor with a fresh start through the mechanism of a discharge from his or her debts after liquidation of all property of the bankruptcy estate. *See Local Loan v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934). Under the Code, all property of the debtor, including exempt property, initially becomes part of the bankruptcy estate. The debtor is thereafter permitted to assert exemptions by filing a list of property that he or she claims as exempt. *See* 11 U.S.C. §§ 541, 522(1) (1994); Bankruptcy Rule 4003. Thus, the exemptions augment the debtor's "fresh start" by allowing the debtor to take back certain assets from the bankruptcy estate.

The Code provides a list of exemptions generally considered necessary for the health, safety and welfare of the debtor, and also allows the debtor to choose between these exemptions and those provided by the

choose some from each. While a majority of states have enacted legislation prohibiting debtors from electing section 522(d) exemptions, Connecticut has not. Thus, in these cases on appeal, the Debtors had the option of taking advantage of the exemptions under section 522(d) or the state-law exemptions, and each chose the Connecticut exemptions. 7 *Collier on Bankruptcy* 1–2 (1995). With respect to a home-

stead exemption, section 522(d)(1) would have exempted "the debtor's aggregate interest, not to exceed $7,500 in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence...." The Connecticut Homestead Exemption, as noted above, provides for an exemption of $75,000, excluding the amount of any consensual or statutory liens.

state of his or her domicile as well an non-bankruptcy federal exemptions. 3 *Collier on Bankruptcy* ¶ 522.02 (1995). Section 522(b) of the Bankruptcy Code allows a debtor to exempt from property of the estate "property that is specified under subsection (d) of this section ..., or in the alternative" "any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition ..." 11 U.S.C. § 522(b)(1), (2)(A) (1994).

In each of the cases before us on this appeal, the Debtors elected to use the exemptions of the state of their domicile, that being Connecticut. State exemption rights are determinable as of the time of the filing of the bankruptcy petition, 11 U.S.C. § 522(b)(2)(A) (1994); *In re John Taylor Co.,* 935 F.2d 75 (5th Cir.1991), and, thus, because the Debtors' petitions were filed on or after October 1, 1993, we must consider whether the Connecticut Homestead Exemption, which was then in effect, was available with respect to unsecured claims arising prior to October 1, 1993.

Homestead exemptions are purely creatures of statute, being unknown at common law. *In re Robinson,* 75 B.R. 985, 988 (Bankr.W.D.Mo.1987). In determining the reach of the Connecticut Homestead Exemption, we look to Connecticut law. *See In re Sanders,* 39 F.3d 258, 260–61 (10th Cir.1994); *Norwest Bank Nebraska, N.A. v. Tveten,* 848 F.2d 871, 873 (8th Cir.1988).

We agree with the Bankruptcy Court that the language of section 3 of the Act is clear and unambiguous. It specifically provides that the new Homestead Exemption "shall take effect October 1, 1993 *and* shall be applicable to any lien for any obligation or claim arising on or after said date." (Emphasis added). The use of the conjunction "and" requires us to read these two phrases together. To read this sentence as the Debtors urge ignores the second half of the sentence, "and shall be applicable to any lien for any obligation or claim arising on or after [October 1, 1993]."

Further, giving this exemption prospective effect only is in keeping with the rule of statutory construction embodied in C.G.S.A. § 55–3 (1995), that "[n]o provision of the general statutes, not previously contained in the statutes of the state, which imposes any new obligation on any person or corporation, shall be construed to have a retrospective effect." This statute codifies a rule of presumed legislative intent that statutes affecting substantive rights shall apply prospectively only, absent a clear and unequivocal expression of a contrary legislative intent. *Miano v. Thorne,* 218 Conn. 170, 175, 588 A.2d 189, 192 (1991); *Darak v. Darak,* 210 Conn. 462, 467, 556 A.2d 145, 148 (1989); *Little v. Ives,* 158 Conn. 452, 456, 262 A.2d 174, 176 (1969) (statutes affecting substantive rights are presumed to be intended to operate prospectively only and to furnish a rule for future cases only unless they contain language unequivocally and certainly embracing past transaction); *Anderson v. Schieffer,* 35 Conn.App. 31, 39, 645 A.2d 549, 554 (1994). Not only is there a lack of clear and unequivocal indication of legislative intent that the statute should apply retrospectively, *see Anderson v. Schieffer,* 35 Conn. App. at 41, 645 A.2d at 555, but Representative Holbrook, who introduced the legislation, stated during the House debate: "We are not talking about anything here that is retroactive. It takes effect with any unsecured loans that occur after the date...." Conn.Gen.Assembly House Proceedings 1993, Vol. 36, Part 30 at 10824, 10855–56; *but see* Comments of Rep. Samowitz, *id.,* at 10830–31 (responding affirmatively to a question regarding whether liens could be in existence prior to the effective date of the Act. As pointed out by the Bankruptcy Court below, however, it appears that the term "liens" referred only to consensual or statutory liens, rather than to judgment liens, given the context in which the question was asked). *See also Edwards v. Kearzey,* 96 U.S. 595, 24 L.Ed. 793 (1877) (holding that the increase in the homestead exemption in North Carolina's state constitution could not be applied retroactively).

The Debtors argue, alternatively, that section 3 of the Act concerns only liens, not unsecured claims, such as those asserted in

their bankruptcies. This argument ignores the overall statutory scheme in which this Act is codified. The new Homestead Exemption is set forth in the section of the general statutes entitled "Exempt property," C.G.S.A. § 52–352b, which is in the chapter dealing with postjudgment procedures. Under state law, there is no avenue for a judgment creditor to enforce a claim against real property other than by obtaining a lien. It necessarily follows that the statute would reference "liens," for it is at this time in the state statutory scheme that a debtor would claim an exemption. Furthermore, the Act defines "exempt" as not being "subject to any form of process or court order for the purpose of debt collection," which as pointed out by the Bankruptcy Court, indicates that the purpose of the statutory exemptions is to prevent judgment creditors from enforcing lien rights against the property.

Finally, had the Legislature intended to draw a distinction as to the effective date between judgment liens and unsecured claims, or between state foreclosure proceedings and bankruptcy proceedings, we believe that they would have done so in a far more cogent and precise manner. We find nothing in the plain language of the Act to support such a distinction.

Thus, we agree with the Bankruptcy Court that the Connecticut Homestead Exemption should apply only to claims arising on or after October 1, 1993. This is the same result reached by Judge Krechevsky in *In re Morzella,* 171 B.R. 485 (Bankr.D.Conn.1994), in which the Bankruptcy Court held that the Homestead Exemption applied prospectively only and did not apply to an unsecured claim arising prior to October 1, 1993. *See also In re Toronto,* 165 B.R. 746, 757 (Bankr.D.Conn. 1994) (Shiff, J.). It also is in keeping with the interpretation given section 3 of the Act by the only two state courts that have considered the issue of the effective date, albeit in a different context. *Centerbank v. Associated Risk Servs., Inc.,* Case No. CV93–035–50–42S, 1994 WL 51183 (Conn.Super.Ct. Feb. 7, 1994) (holding that the legislative history and the "relatively clear language used in the Act" make obvious the intention of the Legislature not to affect a creditor's ability to obtain a remedy when the obligation or claim was already in existence on October 1, 1993); *L. Suzio Asphalt Co., Inc. v. Ferreira Constr. Corp.,* Case No. 35–19–12, 1993 WL 448441 (Conn.Super.Ct. Oct. 19, 1993) (holding that the language of section 3 of the Act was "clear and unambiguous" and that the exemption did not apply to bar a prejudgment attachment lien on a claim or obligation that existed prior to October 1, 1993).

Accordingly, we AFFIRM the decision of the Bankruptcy Court.

**SO ORDERED.**